May it please the court, Daniel Wendt for Larry and Nancy Hacker. The key legal issue here is whether the USDA's determination is inconsistent with law because the agency looked only at the bottom line of the Hacker's net farm income tax schedules. Regardless of the fact that the Hacker's well-being from 2003 to 2004 with regard to farming had declined and that the Hacker's had requested to submit more information in support of their claim. The government has claimed that Steen, this court's decision in Steen supports and even dictates the result of the CIT which affirmed the USDA's decision. Is the real issue here whether they should have been allowed to recompute their tax on Yes, I think that's the real issue. And you have the Anderson case or cases in the Court of International Trade that allow that to happen, right? Allow that to happen or at least force the USDA to offer an explanation of why that should not happen. But I guess so in a way the question is whether the Anderson cases were correctly decided. Now Steen doesn't specifically address this question of redoing it from a cash basis to an accrual basis. But under the statute, the IRS statute, you have to get approval from the IRS to change your accounting method because there's a concern about manipulation if you were allowed to switch from a cash to an accrual method and back and forth from one year to another, right? Right. So why shouldn't that same concern here prevent people from switching from a cash to an accrual basis? Because the concern there is that those are the only reports of net farm income that the clients receive. So the IRS will receive their exclusive reporting of income. Here, what the USDA would receive could be the net farm income as reported to the IRS plus the net farm income as calculated using the alternative method of accounting, whether that's cash or accrual depending on what the farmer used. Are you saying Mr. Wendt that they should be able to, I mean there may be reasons why they would use the cash basis on their tax returns. Are you saying that they should be able to continue to do that but solely for purposes of the statute and the statutory scheme we're dealing with here, they should be able to use an accrual basis? Right. If the individual farmer is willing to invest the time and effort in order to restate the income and can do it in a way that ties back to the income as reported to the IRS, then for TAA purposes, I think it's trade adjustment. It's arbitrary and capricious not to let them have that opportunity. Even though the farmer still would be, say, reporting on income tax returns on a cash basis. Right. Right. Because another factor that would support that is that the farmer makes the decision of whether to report cash and accrual before knowing what the trade adjustment assistance program implications may be. For the hackers, it was several years before that. And as Your Honor indicated, there's a lot of difficulty of switching back and forth and there's a requirement to get approval. So you're saying that for the trade assistance provision, they could choose whichever they want, cash or accrual, whichever one is more beneficial to them? And that's what the USDA allowed in the Robert Anderson cases. Well, that's what the court forced them to do. Well, the court did not dictate that they... The court said, please explain why you're not allowing him to report accrual income and you may reopen the record. And the USDA voluntarily reopened the record and said, we will accept his net farm income. But they did so under protest. Yes. And then that was vacated by the CIT. They affirmed only the results of the decision. But... But isn't there a risk of manipulation if you say, well, okay, we'll choose cash or accrual depending on which is more beneficial to us for the trade assistance provision? Yes, there's a chance for manipulation. I think that's addressed through explaining how it ties back to the actual farm income. I think in many of these cases, it's actually... It's not a complicated analysis because his... For the hackers, their expenses will stay the same and the income will be the same as what is on their tax returns. And the question will be moving income that relates to crops sold in 2003 and 2004 to those tax years off of adjacent tax years. So it would be something that would be supported by the tax returns. And it would also be a relatively minimal computation. Why is it unreasonable for the government to say, we're going to stick you with the methods that you chose for your tax return, whether it's accrual or cash? For one reason, it was a decision that was made without any knowledge of the Trade Adjustment Assistance Program. Secondly, it produces... Under any explanation of the cash method, it can produce distorted results on a year by year basis, especially for farmers and especially for a farmer like Mr. Becker, who does not get paid in one year for a single crop. And as he explained in his original application, he gets paid over three years for every one year of crop that he sells. He gets payments over three years. But the government is assuming that he chose the most accurate and fair method for reporting on his tax returns. He had a choice between accrual or cash. He chose one or the other. Here, he chose the cash method. And why is it unreasonable to say, well, when he filed the return, he was in a good position to know which was the most accurate reflection of his income. And that's what he chose. There's an accurate reflection of income for IRS purposes, which is over the... The IRS would have a much larger perspective, saying, we just wanted to make sure that we get the appropriate taxes from this farmer over a 10-year period or the life of the farm. Whereas for TAA purposes, it's much more important to have accurate... I'm talking about the farmer. The farmer has made a choice here. He said, the most accurate way, I think, to reflect my income is either cash or accrual. And that's why I'm going to report it in my tax return. And he's turning around and saying, well, now for the trade assistance provision, I'm going to use a different method. Why isn't it reasonable for the government to say, you had a free choice on your tax return. You chose one rather than the other. We're going to require that you use the same method for the trade assistance as for income tax. Well, for one, it's not accurate for trade adjustment assistance purposes because... And the hackers, in making that decision, and most farmers, I think, decide not for... They believe both methods are accurate for IRS purposes. The decision comes down to whether one is more... Well, there's a number of factors. But for the hackers and for small farmers like the hackers, it's usually what's more practical. And the cash method is much easier to manage on a year-by-year basis. And then I think it's unreasonable for the USDA not to allow them to restate their income on an accrual basis because here, there's no question that the receipt of the disaster relief payment distorted their income. The USDA recognized that payments like these can mask the overall economic well-being of farmers. And in issuing the final rule, they said trade adjustment assistance payments could distort the analysis, and we are going to take them out of the equation. And so I think there's no difference here with the disaster relief payment. That similarly is preventing Mr. and Mrs. Hacker from getting... But it has no... It does not bear a relationship to how well their farm performed in either 2003 or 2004 because it relates to a disaster in 2001. So their income for 2003 and 2004 is accurately reported to the IRS. There's no question there. But over the life of the farm, but it's not accurate for purposes of saying how did they do in 2003 and how did they do in 2004. The Steen decision, kind of going through that, they had relied on three factors to say that the farmer in the Steen decision, his challenge was not supported. And they pointed to first that his interpretation of the regulation was at odds with the statute. Here, that's very different. They also... And I'll tie this with the second one. In Steen, they also said that the interpretation of the regulations was unsupported by the congressional goals in issuing the trade adjustment assistance. Here, on both points, Steen... Those factors in Steen would support the hackers. A, the interpretation of the regulation is not at odds with the statute. Congress clearly thought that termination of net farm income was something that was open-ended and needed clarification by the agency. And second, the purpose of the program is to provide cash benefits to those who are suffering worse economic well-being in the face of import competition, as a result of import competition. There's no question here that the hackers had suffered significant losses in both years. So really, we're not talking about net farm income but net farm losses. And that their losses, but for the $80,000 disaster relief payment, they would have received benefits. And so the interpretation that's used by the USDA in this case is at odds with the congressional purpose. And also, back to the issue of Steen and Robert Anderson, I just wanted to quickly address that the Steen case said that the net farm income... The Anderson 1 and Anderson 2 cases and Steen can harmoniously coexist. Yes, I believe that Steen set a general framework that by addressing the direct question of whether net farm income should be determined for all products that a farmer makes or only the certified commodity, they set a general framework that said it's reasonable to rely on the tax return, but it would be unreasonable to solely and inflexibly rely on that tax return. And we're not going to list all of the instances where that would be unreasonable, but we're going to specifically note that the farmer here, Mr. Steen, is not alleging that his tax return information is distorted for a specific year. And so that set the general framework of saying... Distorted meaning distorted for Adjustment Act purposes. Yes, yes. And so that... So I think Steen set the general framework, the broad strokes, and then the Anderson cases has sort of the detailed finer strokes that fill in the space set out by Steen. And I think the government has said that Steen needs to be overturned in order for the hackers to get relief, but I think... It said what? It said that Steen would need to be overturned in bank for the hackers... For the hackers to get relief? In order for the hackers to get relief. Oh, I see what you're saying. And I think that's inaccurate. I think the CIT also recognized that Steen and the Anderson cases were consistent. But there's no further questions, I'll... Okay. Mr. Solomonson. Good morning, Your Honor. May it please the Court.  I'm calling upon the administrative record because the agency's decision to deny TAA benefits to the hackers is supported by substantial evidence and conforms not only with the plain language of the applicable statutes and regulations, but also with this Court's decision in Steen. In particular, the hackers were denied TAA benefits because their net farm income was greater in 2004 than in 2003 as reflected on their tax returns. Now, after a consent motion for a voluntary remand, the agency explained that while the hackers requested that the agency recalculate their net farm income using an accrual method of accounting instead of a cash method, the hackers did not provide sufficient additional information to enable such calculation. In essence, the hackers then requested an ad hoc recalculation... Well, suppose they're here. I mean, is your position that once you choose for income tax purposes cash or accrual method, you've got to use the same method for the trade adjustment assistance? No, Your Honor. And in fact... No? No. And in fact, under 7 CFR 1580.301E4 and E6, a TAA applicant is permitted to try and certify that their net income declined by providing evidence in addition to the tax returns. Our point, though, is that the tax returns... I would have thought your position was that Anderson was wrongly decided. I thought you said that in your brief. We said that Anderson was wrongly decided to the extent it held that the agency was obligated always to make a case-by-case determination irrespective of whatever it is that the TAA applicant has put before the agency. I thought your position was that the regulation says that you look to the tax returns. There may be some instances under Steen in which you could change what was on the tax return, but that you couldn't change from accrual to a cash method or vice versa in order to get trade adjustment assistance. I guess the way I would phrase that, Your Honor, is presumptively that's the case. The agency is entitled in the first instance to look at the tax returns and make a decision based on nothing more than those. And if the petitioner is going... If the TAA applicant is going to try and tell the agency that it should not... Should not rely on the net farm income as reported on its tax returns, then the applicant has to put forward the type of information that's found in CFR 1580.301E6, which is either supporting documentation from a CPA or attorney or other relevant documentation and supporting financial data that had been provided to the IRS or another government agency. And in this case, that simply did not happen. In fact, one of the biggest problems on appeal for the hackers is that they abandoned two of the other issues that were raised below initially before the CIT. So what the hackers did is said, well, we have several problems with the net income on our tax returns, and we would like you to adjust for various other payments, not just a disaster payment, but also the timing of certain payments from Welch's and in addition to some other expenses. Now, having dropped those two issues and not ever attempting to put in front of the agency a recalculation, the hackers now want this court to hold that the court should focus on this one disaster payment and say it should have a right to go back and move that disaster payment around to different years. But of course, that is... So that means that the hacker's contention, as counsel just said, that the net income on the tax return is inflated is simply not true. They've never been able to demonstrate to the agency, never sought to even demonstrate that the income is somehow misstated overall. Of course, that would require an entire recomputation of their tax returns. As to the fear of manipulation, I think the court's fears are correct. And in fact, the joint appendix at 26, the hackers noted in a letter that, in fact, that the reason why the disaster payment occurred in 2004 that showed their net income to be higher was due to appropriate tax management procedures. So it is true, as the CIT indicated in its decision. Here, in this case, there is a fear, a legitimate fear of manipulation, because what the TAA applicants have been able to do is make an election to account for the disaster payment in a way that benefits them on the tax end that is delaying the payment to a later year and then trying to reallocate that same disaster payment to an earlier year for the purposes of gaining the TAA benefits. And that's precisely the type of manipulation that. So let me ask you, do you have the, I guess, the decision of the CIT there? I do, Your Honor. This is just one question, and I don't know how it ties in. Probably doesn't tie in this case, but I was just struck by it. If you go to page 5, do you see that? Page 5? Appendix 5 or page 5 of the? I'm looking at page 5 attached to the brief, to the blue brief. It says, the court quotes the regulation at 7 CFR 1580.102, where there's a definition of net farm profit or loss, and it says, excluding payments under this part, okay? Then there's a footnote down at the bottom that says, the court notes that plaintiff's 80,000 disaster relief payment was not the kind of payment under this part contemplated by this regulation. Why is that? What kind of payments are contemplated by that regulation? I believe the answer to that question, Your Honor, is that they're TAA payments. So what the court didn't want, what the regulations don't want to have happen is to penalize a TAA recipient for the money they've received under the TAA program. So if a TAA applicant receives money under the TAA program and their net income goes up, that income should not be counted towards the comparison between the two years. But it says this 80,000 disaster relief payment was not the kind of payment contemplated. Right, because what you would have to do under the regulation here is you'd have to deduct any TAA payments that were received, and the court's point here is that the disaster payment is not a TAA payment. The disaster payment is from some other program, and so to compensate... Oh, I see. So this, okay. So the $80,000 payment is exogenous to the TAA program. I see, okay. So this wasn't a normal, this 80,000 wasn't a normal, that's at issue in this case, wasn't a normal TAA payment. Correct. It was a disaster payment for crop losses due to some natural phenomenon. I can't recall at the moment if it was a flood or something along those lines. But that $80,000 payment came in, and it came in in 2004 and was reported on the hackers 2004. To pick up on your discussion with Judge Geis, Mr. Solomson, you would say that in order for you to prevail, it's not necessary to have the Anderson one and two cases overruled. That is correct, but I think the point of our briefs was to say that the hackers prevailing depends on the broadest reading of Anderson, and that broadest reading of Anderson is inconsistent with the court's holding in steam. What do you mean by that? What I mean by that, Your Honor, is that at least in the first decision in Anderson, the CIT seemed to suggest that the entire regulation wherein the agency says that they can look just at the net farm income as reported on the tax return, that that regulation itself was suspect. In the initial Anderson decision, the court seemed to hold, well, it did hold, agency go back and explain to me how this regulation doesn't create some sort of arbitrary classification to the point where the regulation should be invalid. And that line of thinking, the idea that the regulation is invalid, was excluded by steam. Steam holds that the regulation in question is valid, is rational, is entitled to deference. And the CIT in Anderson did not seem to go that way. And although it kept being remanded to the agency to fully explain its position with respect to the, how that regulation works, steam says the regulation is absolutely fine and is entitled to deference. So in this case, the agency... So the government is free to accept just the, to require just the tax forms, but in its discretion can determine to use something else that might change the bottom line on the tax forms as far as the purposes of this statute. Is that, under that regulation, is that what you're saying? I think in the first instance, yes, your honor, our position is that in the first instance, we look at the tax returns, that's what the regulation says. If the petitioner wants, if the TAA applicant wants to demonstrate to the agency that there's something flawed about their tax returns and so that the agency should look at something else, then the TAA applicant has the burden... So not necessarily flawed, but perhaps isn't fully explanatory of the situation. Correct. Perhaps the tax returns don't fully reflect the true state of their net farm income. You said that earlier, earlier you said that they tried to give you some further information, but it was inadequate. Had it been adequate, they may well have prevailed. Is that the point you're making? Well, no, your honor. They never put forward the type of information that's required under the 7 CFR 1580.301, which has to be either supporting documentation from a CPA or attorney or relevant documentation such as financial data that was submitted either to the IRS or another government agency. So that's... Did they have to show that something was wrong with the tax return that was filed to come under that provision? Well, as Judge Mayer, I think, just pointed out and we agree, it would not necessarily be wrong, but it would somehow be that it was distorted for the purpose of... Something that they reported to the IRS was distorted. Was distorted. But that information that qualifies under 1580.301 was never submitted here. What they did submit in letters and sort of a document dump of data related to the timing of certain payments, other payments, no longer at issue. No longer at issue at the CIT by the time the motions for judgment on the administrative record were rendered. In fact, we argued below in that those other payments were out of the case via the amended complaint filed once counsel had taken over for the hackers which were proceeding per se. But the problem here is that having dropped those other timing of those payments out of the case, there's not even a... They couldn't even make a proffer to this court today that a readjustment could be made that would definitively show that their net income declined. I'm not understanding. Surely the mere fact that they brought in the information that would allow the return to be recalculated on an accrual basis wouldn't show that the original return was distorted, right? Well, that's correct. I mean, there may have to be some other showing on top of that to show that the tax return is distorted. But even assuming the hackers are correct that an accrual accounting method more accurately reflects the financial conditions at the time they filed for TAA... I don't understand more accurately. I mean, cash or accrual, they're just choices that people make. One is not more accurate than the other one. People just make choices as to whether to do it or not. And the IRS allows you to choose one method over the other. What's distortive about using a cash method? I was making a point just from the hacker's perspective. But the hacker's contention is that there's something distorted about the cash basis because it doesn't accurately reflect necessarily in a specific snapshot of time. What you're saying, it's not... The return to pick up on what I think what Doug was saying, the cash method isn't distorted. The hackers would say, I guess, no, our tax return isn't distorted on the cash basis. But the problem is by reporting on the cash basis, it doesn't reflect, absent any distortion, it doesn't reflect the sort of points and considerations that are relevant for the adjustment program in a particular year. Right? Yes, Your Honor. And I think the way they characterize that is it doesn't accurately reflect financial... There's nothing wrong with the cash return. No, not at all. Not at all. And that's precisely why the agency relies on it to make a decision on TAA benefits in the absence of the type of information that an applicant can submit under the 1580.301 regulation. What you're saying is that under that regulation, 1580.301, someone, say, who's on a cash basis, come in and present that information that's listed there in the regulation, the type of stuff, and say, look, I'm still reporting on a cash basis, but please take these things into account to come to the conclusion that I'm, in fact, entitled to the adjustment. Yes. It's not a request to change the reporting basis from cash to accrual. It's really just consider additional items. The answer to that is yes, but with a caveat. It's not sufficient in our view that the applicant simply place a bunch of data before the agency and say, please take this into account. It must actually recompute the net farm income and provide that additional data supporting documentation. On an accrual basis. On the accrual basis. But I thought you said that wasn't sufficient. It isn't just sufficient to bring in the information that would allow you to recompute it on an accrual basis. You said a moment ago, they have to, in addition to that, show that the original method was distorted. Yes, Your Honor. I mean, I believe that's what this scene is getting at when it says that there are these other process, that 15, the 301 process, that there has to be some allegation that it's some support for the notion that it's distorted, that the tax returns don't accurately reflect the financial condition. Thank you. Thank you, Your Honor. First, I'd like to defend Mr. Hacker. The discussion about appropriate tax management was in his letter about prepaying for expenses. He wasn't saying that. So I think, as I understand it, I think the representation about what he said about tax management was not accurate. And also, saying that Mr. Hacker just kind of dumped data on the USDA. This was one of the best TAA applications that I've seen. I've seen other applications where there's no data whatsoever. However, Mr. Hacker provided sufficient information to show that his costs in 2003-2004 were constant, relatively constant, that he farmed the same acreage in both years, and that he produced a lot less yield. So he had much fewer grapes to sell. Is your theory that the use of the cash method here was distorted because he couldn't get the trade adjustment assistance payment, whereas if he used the accrual method, he could? It was distorted for TAA purposes of measuring his economic well-being in the face of import competition. So it's accurate for IRS purposes, but it's distorted for TAA purposes. Just like an income statement would be accurate for IRS purposes when it includes a TAA payment, the USDA agrees that that is distorted for purposes of the TAA if you include a cash payment made under that program. So they'll say, yes, it's accurate for IRS purposes, but it's distorted for TAA purposes. So it doesn't benefit him? That doesn't benefit him, no, because they never gave him a payment. Mr. Wayne, you say it, and Mr. Solomson uses the term, too, distorted. I mean, I know there's nothing wrong with the cash. I mean, distorted suggests that there's something wrong with the cash return, cash basis return, I should say. But there's nothing wrong with it. It's just that it doesn't work to get him the TAA benefits. How is that a distortion? Well, it's a distortion of his income for the 2004 crop year. So they say, you know, use the tax return for the crop year that most closely correlates to the tax schedule. And so they say for the crops that we produced in 2004, our income actually went down quite a bit, and the tax return is distorted for measuring what we made from that crop, because A, it includes a disaster relief payment that relates to our 2001 or 2002 crop, and B, it includes payments from our 2003 crop. And I'd also like to discuss. I think our time has expired. Thank you very much. Thank you.